20-3134-cv
*Frye v. Lagerstrom*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of September, two thousand twenty-one.

PRESENT:
> JOHN M. WALKER, JR.,
> JOSEPH F. BIANCO,
> STEVEN J. MENASHI,
> > *Circuit Judges.*

---

Joseph Frye,

> *Plaintiff-Counter-Defendant-*
> *Appellee*,

> v.                                                            20-3134

Benjamin F. Lagerstrom, AKA Benjamin Irish,

> *Defendant-Counter-*
> *Claimant-Appellant*,

Andrea Simon, Matthew Blank, Jonathan Baram, Damon Baram,

> *Third Party Defendants-*
> *Counter-Defendants*,

Showtime Networks Inc., CBS TV,

> *Third Party Defendants*,

**CBS INC./SHOWTIME, Little Lion Tiny Tiger Productions, David Nevens, Tim Cruthers, Elizabeth Mansfield, David Warren Baram, Warren and Baram Management, Margaret Germosen AKA Margarita Dominguez, The Doe Parties of: "Michael Cole," "Heidi," "Johnny Diaz,"**

*Counter Defendants,*

**MG Public Relations, Inc.,**

*Defendant.*

---

**FOR DEFENDANT-COUNTER-CLAIMANT-APPELLANT:** Benjamin F. Lagerstrom, pro se, New York, NY.

**FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLEE:** Danny Jiminian, Jiminian Law PLLC, New York, NY.

Appeal from a judgment and order of the United States District Court for the Southern District of New York (Buchwald, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this Court's July 2, 2019 summary order is **VACATED**, the district court's June 28, 2018 judgment is **AFFIRMED IN PART** and **VACATED IN PART**, and its December 23, 2019 order is **AFFIRMED**.

In 2015, Joseph Frye, counseled, sued defendant-appellant Benjamin Lagerstrom, pro se, and Lagerstrom's production company, Dianacollv, Inc., ("Dianacollv") asserting copyright infringement and breach of contract claims. In response, Lagerstrom filed counterclaims and made third-party claims against a number of third-party defendants, alleging that this action was brought against him as part of a conspiracy to harm him. Frye moved for summary judgment as

2

to his copyright and contract claims; Lagerstrom moved for summary judgment as to his counterclaims and third-party claims; and Frye and the third-party defendants moved to dismiss and strike the counterclaims and third-party claims. In August 2017, the district court granted Frye's and the third-party defendants' motions and denied Lagerstrom's motion. The district court entered an order and judgment in June 2018, which among other things, permanently enjoined Lagerstrom from infringing Frye's copyright in the work at issue.

Lagerstrom then filed his first appeal. In July 2019, we affirmed in part but vacated the ruling granting summary judgment to Frye because Lagerstrom had not received *Vital* notice.[1] On remand, the district court provided Lagerstrom with *Vital* notice, Frye renewed his motion for summary judgment, and, on December 23, 2019, the district court granted it. Lagerstrom filed his second appeal, which we dismissed in August 2020 because—since claims against Dianacollv were still pending—the district court had not issued a final judgment. The district court then entered a final default judgment against Dianacollv, and Lagerstrom now appeals for a third time. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.      Jurisdiction

This Court has appellate jurisdiction over "final decisions of the district courts." 28 U.S.C. § 1291; *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 35 (2d Cir. 2014) (per curiam). "A final judgment or order is one that conclusively determines all pending claims of all the parties to the litigation, leaving nothing for the court to do but execute its decision."

---

[1] Pursuant to *Vital v. Interfaith Medical Center*, a pro se litigant must be notified by either the district court or opposing counsel of the nature of summary judgment and the consequences of failing to respond to a motion for summary judgment. 168 F.3d 615, 620–21 (2d Cir. 1999).

*Petrello v. White*, 533 F.3d 110, 113 (2d Cir. 2008). In a July 2, 2019 summary order, a panel of this Court addressed Lagerstrom's appeal from the district court's June 28, 2018 judgment, which was final as to all pending claims of all of the parties in the litigation *except* Dianacollv. Accordingly, we lacked jurisdiction over that appeal, and we must now vacate our July 2, 2019 summary order which was entered in the absence of jurisdiction.

The district court's June 28, 2018 judgment was a final decision on Lagerstrom's claims against Frye and the third parties. As for Frye's claims against Lagerstrom, the district court has not yet entered a judgment on these claims, but its December 23, 2019 order was a final decision on these claims because it granted summary judgment in Frye's favor and directed the clerk of the district court to enter a judgment "identical to the one previously entered (ECF No. 227)," App'x at 35, "leaving nothing for the court to do but execute its decision." *Petrello*, 533 F.3d at 113. Finally, the district court's August 26, 2020 default judgment resolved the claims against Dianacollv, and cured the finality issue that caused this Court to dismiss Lagerstrom's previous appeal. Thus, we now have jurisdiction to review the district court's final decisions against Lagerstrom.

A notice of appeal must "designate the judgment, order, or part thereof being appealed." *Elliott v. City of Hartford*, 823 F.3d 170, 172 (2d Cir. 2016) (per curiam) (quoting Fed. R. App. P. 3(c)(1)(B)). "This requirement is jurisdictional." *Id.* However, we construe a notice of appeal liberally, "taking the parties' intentions into account." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256 (2d Cir. 1995). The Court's jurisdiction "depends on whether the intent to appeal from that decision is clear on the face of, or can be inferred from, the notices of appeal." *New Phone Co. v. City of New York*, 498 F.3d 127, 131 (2d Cir. 2007) (per curiam).

4

Lagerstrom's notice of appeal states that it is taken from the district court's August 26, 2020 order—which entered default judgment against Dianacollv and did not concern Lagerstrom—and from "any and all orders and rulings that were adverse to him." App'x at 76. However, we construe his appeal as taken only from the district court's December 23, 2019 order granting Frye's renewed motion for summary judgment because that is the only ruling concerning Lagerstrom that has not yet been reviewed by this Court.[2]

## II. Summary Judgment

We review a grant of summary judgment *de novo*, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013) (per curiam). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). Although we draw all inferences in favor of the non-moving party, the non-moving party may not rely upon "conclusory statements or mere allegations" but must "go beyond the pleadings, and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) (alterations and internal quotation marks omitted).

Frye's copyright infringement and breach-of-contract claims are based on Lagerstrom's

---

[2] "[T]he law of the case doctrine forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings." *United States v. Williams*, 475 F.3d 468, 471 (2d Cir. 2007). Thus, a failure to raise an issue in an earlier appeal bars a litigant from raising it in a second appeal. *Doe v. East Lyme Bd. of Educ.*, 962 F.3d 649, 662 (2d Cir. 2020).

use of footage from a short film called "Homeless: A Love Story" ("Homeless"), which Frye wrote and directed and Lagerstrom worked on pursuant to a "Crew Agreement" signed by Frye and Dianacollv.   At the time, Frye was employed by Showtime Networks, Inc., a subsidiary of CBS Corporation, but his work on Homeless was unrelated to that employment.   In 2014, before Frye completed Homeless and without Frye's permission, Lagerstrom published a video on YouTube (the "pilot video") composed of nearly six minutes of Homeless footage and crediting Lagerstrom as the director.   In 2015, Lagerstrom posted another four videos containing Homeless footage on YouTube and Vimeo ("the documentary videos"), in which he accused Frye of conspiring to frame or harm him and his company on behalf of Showtime and which promoted a related book and feature-length documentary.

## A.    Copyright Infringement

"The owner of a copyright has the exclusive right to . . . reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17 U.S.C. § 106).   "To establish infringement of copyright, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"   *Id.* (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).   A certificate of copyright registration provides *prima facie* evidence that a copyright is valid and the work is original.   *See Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001) (citing 17 U.S.C. § 410(c)).   "[T]he fair use of a copyrighted work . . . for purposes such as . . . news reporting . . . is not an infringement of copyright."   17 U.S.C. § 107.

Frye affirmed that he obtained certificates of copyright registration for the script and film

6

of Homeless, and that Lagerstrom incorporated Homeless footage into several videos that he published.   Lagerstrom does not dispute these facts.

Although Lagerstrom appears to argue that his use of Homeless footage constituted fair use, he did not present evidence in support of this defense, and the record does not demonstrate its applicability.   Specifically, the record does not establish what effect Lagerstrom's use had on the potential market for the film or how substantial Lagerstrom's use of the footage in his documentary videos was relative to Homeless as a whole.   *See* 17 U.S.C. § 107 (stating that the factors relevant to a fair-use defense include: "the purpose and character of the use"; "the nature of the copyrighted work"; "the amount and substantiality of the portion used in relation to the copyrighted work as a whole"; and "the effect of the use upon the potential market for or value of the copyrighted work"). The evidence in the record suggests that a fair use defense is unavailable; for example, Lagerstrom's pilot video was approximately half the intended length of Frye's completed film. *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 89 (2d Cir. 2014) ("In general, the more of a copyrighted work that is taken, the less likely the use is to be fair." (internal quotation marks omitted)).   Finally, the evidence does not support Lagerstrom's claims that Frye and the third-party defendants were engaged in a newsworthy conspiracy against him, as necessary to support a fair use defense for news reporting.

Lagerstrom also contends that the copyright registrations were invalid because they conflicted with Frye's contractual agreements with both Lagerstrom and CBS.   These arguments are not supported by record evidence.   The Crew Agreement between Lagerstrom and Frye expressly affirmed Frye's ownership of the project.   Lagerstrom did not present any evidence to support his claim that Frye's employment contract with Showtime forbade him from obtaining

7

intellectual property rights in Homeless.

Finally, Lagerstrom argues that the material he copied was not Frye's original work and that the district court erred in declining to review evidence, in the form of video footage and Lagerstrom's book about this dispute, in support of that claim. But Lagerstrom did not submit the video footage in response to either of Frye's motions for summary judgment. Instead, it appears that he attempted to file the videos as part of the amended answers that the district court later struck from the record. As the district court explained in a letter to Lagerstrom, "Answers ar[e] not the appropriate vehicle for a party to set out all of its evidence." App'x at 15; *see* Fed. R. Civ. P. 8(b). The court did not err in declining to consider evidence that was not in the record at summary judgment. The district court correctly granted summary judgment to Frye on this claim because Lagerstrom failed to produce evidence contradicting Frye's *prima facie* evidence of copyright infringement. *See Boisson*, 273 F.3d at 267.

**B.     Breach of Contract**

The elements of a breach-of-contract claim under New York law are "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).[3] Frye produced evidence of each of these elements: (1) he submitted a copy of the contract in which, among other things, Lagerstrom agreed that "all footage . . . is the property of" Frye and that Lagerstrom "will not distribute or display such footage in any way other than as an example/demonstration of [his] work establishing [his] efforts of such," App'x at 80; (2) he affirmed that he performed all of his obligations under the contract up to the point he learned of

---

[3] The parties do not dispute that New York law applies to their contract dispute.

8

Lagerstrom's breach; (3) he affirmed that Lagerstrom published the pilot and documentary videos using Homeless footage; and (4) he affirmed that this publication caused him damages by interfering with his plans to promote the film.

Lagerstrom does not dispute this evidence, and the argument section of his appellate brief does not discuss the breach-of-contract claim. Elsewhere in his opening brief and reply brief, he asserts that he "used video footage [Frye] gave [him] the written right to display as an example of [his] work as a means to defend [him]self against [Frye]" and that the district court "ruled that Lagerstrom acted within the confines of the disputed contract," which is incorrect. Appellant's Br. at 17–18, 22. Lagerstrom has not meaningfully disputed that he breached the contract; his own description of his use—both in a prior filing in the district court and in his arguments concerning the fair use defense—indicates that it was outside the scope of the contract. In his filings, he asserts that he used the footage in order to notify the public of Frye's alleged fraud.[4] Even if the pilot video constituted a demonstration of Lagerstrom's work within the meaning of the contract, Lagerstrom has not explained how the use of Homeless footage in the documentary videos could fall within that contractual provision.

\*       \*       \*

---

[4]  In his opposition to Frye's motion to dismiss his counterclaims, Lagerstrom describes his use as follows:  "However, [Frye] issued [Lagerstrom] the *license* to display the disputed footage as an 'example of [his] work', which is only reasonable to infer as being for the purpose of commerce *exactly in the same fashion*, but [Lagerstrom] did not even *use* this application, opting only to display the footage in a limited showing which he did not charge for.  In fact, the license [Frye] issued him, unnecessary in this context anyway for a wide variety of reasons, was issued to [Lagerstrom] so he could *profit* from that use, by obtaining work based on his abilities displayed thereby. . . .  [Lagerstrom] presented footage as part of a discussion with the public that absolutely met the public interest of protecting the People against criminal activity[.]"  Opp'n to Counter-Defs. Joseph Frye and Danny Jiminian's Mot. to Dismiss ¶¶ 37–38, *Frye v. Lagerstrom*, No. 15-cv-05348 (S.D.N.Y. Dec. 1, 2016) (third alteration in original).

We have considered all of Lagerstrom's remaining arguments and find them to be without merit.   Accordingly, we **VACATE** our July 2, 2019 summary order; **VACATE** the district court's June 28, 2018 judgment insofar as it granted summary judgment to Frye before Lagerstrom had been provided *Vital* notice, but otherwise **AFFIRM** that judgment; and **AFFIRM** the district court's December 23, 2019 order granting summary judgment to Frye.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10