### TUFENKIAN IMPORT/EXPORT VENTURES, INC., Plaintiff,

v.

**EINSTEIN MOOMJY, INC., Bashian Brothers, Inc., A.L. Meyers Furniture, Central Carpet Co., Kenneth L. Mink & Sons, Inc., Home Depot, Inc., Michael Nichols–Marcy, and Noreen Seabrook Marketing, Inc., Defendants.**

### No. 99 CIV. 11182(WHP).

United States District Court, S.D. New York.

April 22, 2002.

---

Mark Landau, William Thomashower, Fran Obeid, Kaplan, Thomashower & Landau LLP, New York City, for plaintiff.

Lawrence D. Mandel, Mandel & Peslak, LLC, Freehold, NJ.

Marsha G. Ajhar, Abelman, Frayne & Schwab, New York.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

This case tests the boundaries of copyright protection for a derivative textile design based largely on public domain sources. Plaintiff Tufenkian Import/Export Ventures, Inc. ("Tufenkian Import") alleges that defendants infringe its copyright in its Floral Heriz rug design by selling and distributing a substantially similar rug titled the Bromley 514. Defendants counter that the Bromley 514 is derived substantially from public domain designs and does not infringe Tufenkian Import's copyright. The parties' dueling motions for summary judgment are before this court. For the reasons that follow, defendants' motion for summary judgment is granted and plaintiff's motion is denied.

## BACKGROUND

In 1993, James Tufenkian ("Tufenkian"), president of Tufenkian Import, created the Floral Heriz rug. (Pl. Rule 56.1 Stmt. Supp. Summ. J. at 1; Bashian Rule 56.1 Stmt. Supp. Summ. J. ¶ 11; *see* App. 1.) Tufenkian began designing the rug by scanning into a computer two works in the public domain: a Persian rug sold by Battilossi, (the "Battilossi rug") and an Indian Agra rug designed by Doris Blau (the "Blau rug"). (Tufenkian Dep. at 39–45, 47–50; *see* Apps. 2 and 3.) Tufenkian had found an advertisement for the Battilossi rug in a July 1986 edition of Hali, the International Magazine of Antiques, Carpets and Textiles (the "Hali magazine"),

and used a portion of it as the basis for the center field of the Floral Heriz. (Tufenkian Dep. at 41–42.) Once he had scanned the advertisement into his computer, he removed some of the rug's design elements to open the space, reconfigured the remaining elements, and elongated the design in order to "create the openness that [he] was looking for." (Tufenkian Dep. at 44.) Since Tufenkian's ultimate goal was to create an "all-over design . . . [with] no central focus" (Tufenkian Dep. at 44), he created an asymmetrical pattern instead of maintaining the Battilossi's symmetry. However, he admittedly preserved the "existing elements and . . . arrangement" of the original Battilossi. (Tufenkian Dep. at 43.)

For the primary border of the Floral Heriz, Tufenkian adapted the primary border of the Blau rug. Similar to his treatment of the Battilossi design, Tufenkian simplified the original Blau border by removing the smaller elements and maintaining the larger, primary ones in order to open the space between them. (Tufenkian Dep. at 47–49.)

Between the modified Battilossi center and the modified Blau border, Tufenkian inserted a thin, minor border inspired by "Gebbah" Persian carpets. (Tufenkian Dep. at 49.) That border features "primitive" animal stick figures evenly spaced around the rug. (Tufenkian Dep. at 50.) He also created a thin, minor border consisting of castle-like forms side-by-side around the outermost edge of the rug.

Tufenkian applied to the Copyright Office for a copyright registration certificate. Although he had previously submitted applications for certificates of registration identifying other works as derivative, the application he submitted for the Floral Heriz gave no such indication. (Bashian Rule 56.1 Stmt. Supp. Summ. J. ¶ 12; Thomashower Aff. Ex. C: ˙Floral Heriz Reg. Cert. ¶ 6.) The application states that the

work was completed in 1995 and first published on January 15, 1995. (Thomashower Aff. Ex. C: Floral Heriz Reg. Cert. ¶ 3.) The Copyright Office issued a registration certificate for the Floral Heriz design, effective March 20, 1995, the date the Copyright Office received the application, fee and deposit. (Thomashower Aff. Ex. C.)

In 1995, Bashian Brothers, Inc ("Bashian") hired Michael Nichols–Marcy ("Marcy") as a creative consultant to help design the Bromley 514. Marcy previously worked for Tufenkian from 1986 to 1989, after which he founded defendant Noreen Seabrook Marketing. (Marcy Dep. at 23–24, 14; Ralph Bashian Dep. at 10.) Tufenkian Import alleges that Marcy, as one of its former employees, knew of the Floral Heriz's commercial popularity and copied its design to ensure the success of his first design project for Bashian. (Pl.'s Mem. of Law in Supp. of its Summ. J. Mot. at 5–8.)

Marcy created the Bromley 514 with a designer from Nepal Carpet Enterprises ("Nepal Carpet"), a manufacturing and design group located in Kathmandu, Nepal. Marcy maintains that he conceived of the Bromley 514 in May 1996 and that he was not aware of the Floral Heriz design at that time. (Marcy. Dep. at 14, 50.) However, he learned of the Floral Heriz design during the creation of the Bromley 514, and was aware of it when he reviewed the draft carpet Nepal Carpet constructed. (Marcy Dep. at 50–51, 57–58, 71.) Nepal Carpet had a copy of Tufenkian's advertisement for the Floral Heriz when it created the Bromley 514. (Marcy Dep. at 82.) According to Marcy, the center field of the Bromley 514 derives from the Battilossi advertised in the July 1986 edition of Hali magazine. (Marcy Dep. at 32–34, 69; see App. 4.)

When Marcy reviewed the draft prototype of the Bromley 514 that Nepal created, he thought the primary border was

"somewhat ugly" and too similar to Tufenkian's modified Blau design. (Marcy Dep. at 50, 81–82, 84.) Marcy, who did not know what had inspired Nepal Carpet to create that border, directed Nepal Carpet to modify it to add "more detail and more balance." (Marcy Dep. at 84.) The Bromley 514 also replicates the Floral Heriz minor outer border filled with castle-like figures and a minor inner border with primitive, animal stick figures, albeit in different shapes. (Compare App. 1 with App. 4.)

In its motion for summary judgment, plaintiff asserts that defendants intentionally copied the Floral Heriz design and therefore infringed plaintiff's copyright. (Pl.'s Mem. Supp. Summ. J. at 9–12.) Plaintiff also contends that the Floral Heriz is not a derivative work, but rather a design that is substantially different from the Battilossi and Blau rugs such that it is entirely copyrightable. (Pl.'s Mem. Supp. Summ. J. at 14, Pl.'s Reply at 7–8.) In alleging that the Bromley 514 is substantially similar to the Floral Heriz design, plaintiffs assert that the similarities should be reviewed from the vantage of an ordinary observer. (Pl.'s Mem. Supp. Summ. J. at 7.)

Defendants respond that plaintiff's copyright registration certificate is invalid and allege that plaintiff engaged in fraud on the Copyright Office by failing to identify the Floral Heriz design as a derivative work. (Defs.' Opp. at 8–13.) Defendants further contend that a genuine issue of material fact exists concerning whether there is direct evidence of their alleged copying of the Floral Heriz. (Defs.' Opp. at 13–15.) Defendants assert that the Floral Heriz is a derivative work only subject to a narrow copyright in Tufenkian's original contributions. (Defs.' Opp. at 16–20.) Moreover, defendants assert that a discerning observer's perspective should be used when determining whether the Brom-

ley 514 is substantially similar to the Floral Heriz design. (Defs.' Opp. at 20–23.)

## DISCUSSION

### I. Summary Judgment Standards

Summary judgment may be granted only when there is no genuine issue of material fact remaining for trial, and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 559 (2d Cir.1997). Materiality is determined by the governing substantive law, Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir.1988), in this case the Copyright Act. Repp v. Webber, 132 F.3d 882, 890 (2d Cir.1997). An issue of fact is "material" if it might "affect the outcome of the suit under the governing law [while] an issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Shade v. Housing Auth. of New Haven, 251 F.3d 307, 314 (2d Cir.2001). In determining whether the movant has met this burden, this Court must resolve all ambiguities and draw all permissible factual inferences in favor of the party opposing the motion. Flanigan v. General Elec. Co., 242 F.3d 78, 83 (2d Cir.2001); cert. denied,534 U.S. 1065, 122 S.Ct. 665, 151 L.Ed.2d 580 (2001).

If the moving party meets its initial burden, the non-moving party must then come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Ra-

*dio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). Where it is apparent that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight," summary judgment should be granted. *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994). "The mere existence of a scintilla of evidence in support of the (nonmovant's) position will be insufficient." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Instead, the non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. 2505. Summary judgment of noninfringement is appropriate in a copyright infringement action when similarity between the competing works concerns only noncopyrightable elements of the plaintiff's work, or when no reasonable jury, properly instructed, could find that the two works are substantially similar. *Warner Bros. v. Am. Broadcasting Co.,* 720 F.2d 231, 240 (2d Cir.1983) (citations omitted).

## II. *Elements of Copyright Infringement*

■ The elements of a prima facie case of copyright infringement are (1) ownership of a valid copyright and (2) unauthorized copying of a material portion of expression. *See Feist Publ'ns, Inc. v. Rural Tel. Service Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Fonar Corp. v. Domenick,* 105 F.3d 99, 104 (2d Cir.1997); *SHL Imaging, Inc. v. Artisan House, Inc.,* 117 F.Supp.2d 301, 305 (S.D.N.Y.2000). Defendants contest both elements.

## A. *Ownership of a Valid Copyright*

■ A certificate of registration from the Copyright Office is prima facie evidence of ownership. *See* 17 U.S.C. § 410(c); *Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 908 (2d Cir.1980). Plaintiff received a certificate of registration from the Copyright Office within five years of the first publication of the Floral Heriz. The certificate is, therefore, prima facie evidence of the work's originality and of the facts stated therein. 17 U.S.C. § 410(c). Defendants can rebut this prima facie status by introducing some evidence calling into question plaintiff's claim of copyright, as the certificate "merely orders the burdens of proof." *Durham Indus., Inc.,* 630 F.2d at 908.

■ Defendants attempt to rebut the prima facie effect of plaintiff's certificate of registration by asserting that Tufenkian failed to disclose to the Copyright Office the fact that the Floral Heriz incorporated significant portions of the public domain Battilossi and Blau rugs. (*See* Tomashower Decl. Ex. C: Cert. of Registration for the Floral Heriz.) Defendants further argue that by failing to designate the Floral Heriz a derivative work, plaintiff committed fraud on the Copyright Office and the certificate of registration should be invalidated. (Defs.' Opp. to Pl.'s Summ. J. at 8–13.)

Plaintiff does not dispute that the registration application does not designate the work as derivative. Rather, plaintiff denies that the Floral Heriz is a derivative work, asserting that Tufenkian combined a number of elements into an altogether new work that is subject to total copyright protection. (Pl.'s Mem. Summ. J. at 14, Pl.'s Reply at 7–8.)

However, defendants rebut the prima facie status of plaintiff's certificate of registration by introducing uncontested evidence calling into question the copyright-

ability of the Floral Heriz. Specifically, defendants have shown that plaintiff incorporated significant portions of the public domain Battilossi and Blau rugs into the Floral Heriz, and that those elements form the predominant total concept and feel of the Floral Heriz. *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 763–764 (2d Cir.1991) (proof that plaintiff copied public domain fabric design rebuts presumption of copyrightability accorded by certificate of registration); *Gibson Tex, Inc. v. Sears Roebuck & Co.*, 11 F.Supp.2d 439, 442 (S.D.N.Y.1998) (plaintiff's "failure to register the [fabric] design as a derivative work rebuts the presumption of the work's validity"); *Native Textiles v. Intimate Touch, Inc.*, 92 Civ. 8979(JSM), 1993 WL 14962, at *1 (S.D.N.Y. Jan. 13, 1993) ("defendant has successfully rebutted plaintiff's evidence by credible evidence that plaintiff's design was copied from a foreign design which is in the public domain"). Thus, the burden shifts to plaintiff to demonstrate that the Floral Heriz is copyrightable. Defendant's assertion of fraud on the Copyright Office is addressed below in section V.

## B. *Originality of the Floral Heriz*

Elements of a work that are original are copyrightable. *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir.2001) ("Inasmuch as copyright protection extends only to those components of a work that are original to the author, originality is 'the *sine qua non* of copyright'.") (citing *Feist Publ'ns*, 499 U.S. at 348, 111 S.Ct. 1282). Tufenkian Import contends that the Floral Heriz is copyrightable in its entirety. (Pl.'s Mem. Supp. Summ. J. at 14, Reply at 7–8.) This Court finds, however, that the Floral Heriz is a derivative work afforded much less protection than plaintiff asserts.

The Copyright Act defines a derivative work as: "a work based upon one or more preexisting works ... in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. The standard of originality for derivative works has not always been clearly stated in the Second Circuit. *See* 1 William Patry, *Copyright Law & Practice* 161 (1994) ("Patry"), Supp. at 21 n. 68.

The standard for originality is low, requiring only that the work has been independently created and contain more than a modicum of originality. *Feist Publ'ns*, 499 U.S. at 362, 111 S.Ct. 1282; *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 674, 680 (2d Cir.1998); *Sapon v. DC Comics*, No. 00 Civ. 8992(WHP), 2002 WL 485730, at *7–8 (S.D.N.Y. March 29, 2002). The Copyright Act does not define the term "original." The Second Circuit recently explained that

> [o]riginality does not mean that the work for which copyright protection is sought must be either novel or unique ... it simply means a work independently created by its author, one not copied from pre-existing works, and a work that comes from the exercise of the creative powers of the author's mind, in other words, 'the fruits of [the author's] intellectual labor.'

*Boisson*, 273 F.3d at 268 (citation omitted). In the case of derivative works, the work must bear a distinguishable variation from the original.

Here, it is undisputed that Tufenkian took two public domain works, the Battilossi Persian rug and the Indian Agra Blau rug, and adapted them. Significantly, however, the public domain works remain the predominant feature of the Floral Heriz. The fact that plaintiff added inner and outer minor borders to its adaptation of the Battilossi and Blau rugs does not make the Floral Heriz an original work. Instead, these additional elements and the adaptations go into the mix of determining whether, *as a whole*, plaintiff's contributions satisfy the general standard of origi-

nality for a derivative work copyright. A reasonable jury could only find that the Floral Heriz is based predominantly on the public domain Battilossi and Blau rugs. Thus, the Floral Heriz is a derivative work.

To determine whether the Floral Heriz is sufficiently original to merit copyright protection, this Court must compare the two public domain sources that the Floral Heriz is based on with the new elements contributed by plaintiff. *See Woods v. Bourne Co.*, 60 F.3d 978, 991 (2d Cir.1995) ("To determine whether a work is sufficiently original to be a derivative work, the [trial] judge ... must make findings of fact based upon a comparison of the two works. The judge must then apply the legal standard of originality to the facts to determine whether the standard has been met."). While the mere reduction or expansion of public domain elements are insufficient to satisfy the originality requirement, *see L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490–91 (2d Cir.1976), plaintiff engaged in non-trivial adaptation of individual elements from the Battilossi and Blau rugs, including eliminating some elements, compressing portions and elongating the design. In addition, plaintiff created two new minor borders neither of which were derived from public domain works. The placement, ordering, and combination of the new design warrants protection. This aesthetic is partly attributable to the fact that the Floral Heriz, unlike the Battilossi, is asymmetrical and has an over scaled border derived from an entirely different style rug (Indian Agra, rather than Persian). Thus, Tufenkian infused the derivative work with sufficient originality to support copyright protection.

Yet the protection accorded to the Floral Heriz is thin, due to the very substantial incorporation of public domain elements. *See Feist Publ'ns, Inc.*, 499 U.S. at 349, 111 S.Ct. 1282; *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir.1996) ("Where the quantum of originality is slight and the resulting copyright is 'thin,' infringement will be established only by very close copying because the majority of the work is unprotectable.") (citing Patry at 607 n.369); *Folio Impressions*, 937 F.2d at 765 ("It must be kept in mind that the scope of copyright protection for [plaintiff's] fabric design ... is narrow, extending only to the work's particular expression of an idea, not to the idea itself"); *Native Textiles*, 1993 WL 14962, at *1 ("The substantial similarity between the foreign, public domain design and the plaintiff's design extremely limits the scope of plaintiff's copyright. Plaintiff's copyright is limited to its modifications of the public domain design.").

Plaintiff's argument that the Floral Heriz design is entitled to copyright protection as a whole is based on an inaccurate, if persistent, interpretation of the Copyright Act. Plaintiff asserts that a comparison of the Floral Heriz to the Battilossi and Blau works demonstrates that the Floral Heriz is not substantially similar to those works, and therefore is an entirely original, wholly copyrightable creation. (Pl.'s Mem. Supp. Summ. J. at 14, Reply at 7–8.) Plaintiff asserts that a creation ceases to be a derivative work if it is so transformed that it is no longer substantially similar to the source from which it was derived. That test, however, confuses the test for infringement with the one used to determine the standard of originality in a derivative work. *See Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 33 (2d Cir.1982); Patry at 162, 162 n. 171 ("[t]he tests for copyright validity and copyright infringement are not the same.") (citing *Durham Indus. Inc.*, 630 F.2d at 912 n. 9). "Substantial similarity" is the test used to determine whether an accused

work copied a material amount of expression such that the plaintiff's copyright is infringed. *Fisher–Price, Inc.*, 25 F.3d at 123. In contrast, to determine whether a derivative work contains sufficient originality to confer protection, courts consider whether the work has been independently created and contains more than a modicum of originality. *Feist Publ'ns, Inc.*, 499 U.S. at 362, 111 S.Ct. 1282. When a district court confused these two tests, the Second Circuit noted that "the district court applied a test that erroneously mingled the standard for sufficient *originality* and the test for *infringement.*" *Eden Toys, Inc.*, 697 F.2d at 34 (emphases in original). The *Eden Toys* decision then contrasted the standard of originality for derivative works with the standard for copyright infringement. 697 F.2d at 34. Thus, plaintiff's reliance on the "substantial similarity" test to assert that the Floral Heriz is not a derivative work is misplaced and results in an assertion that is incorrect as a matter of law.

Since there is no dispute that plaintiff owns the Floral Heriz, plaintiff must next establish that defendants engaged in copying, and that such copying appropriated a material amount of expression.

### III. *Copying*

▇▇▇ The initial copying requirement is concerned only with the fact of copying, rather than independent creation. It is not concerned with whether the copying rises to the level of an infringing taking. *Eckes v. Card Prices Update*, 736 F.2d 859, 863–64 (2d Cir.1984). Thus, copying at the initial stage can be established in many ways:

> To prove the defendant copied from the plaintiff rather than independently creating its work or copying from a third party, the plaintiff may, but certainly need not, establish that the defendant copied a material amount of expression. The plaintiff can equally effectively establish copying by proving that the defendant copied a single, brief, idiosyncratic phrase, or even unprotectible material.

Patry at 692.

▇▇▇ Copying can be proven in several ways: (1)directly; (2) by a defendant's admission; (3) indirectly by establishing that the defendant had access to plaintiff's work and that there is some level of similarity between the parties' works; or (4) by "other factors circumstantially evidencing copying." Patry at 695–96; *Procter & Gamble Co. v. Colgate–Palmolive Co.*, 199 F.3d 74, 77 (2d Cir.1999).

▇▇▇ Plaintiff asserts that defendants copied the Floral Heriz design, but proffers no evidence to support a finding of direct copying. Defendants respond that they did not copy from plaintiff's Floral Heriz. (*See* Marcy Rule 56.1 Stmt. Opp. Summ. J. ¶ 12; Marcy Dep. at 44–45; 71–72.) Thus, to establish infringement, Tufenkian Import must demonstrate copying by other means. In this regard, Tufenkian Import asserts that Marcy and Nepal Carpet had access to the Floral Heriz design and that their creation, the Bromley 514, is substantially similar to the Floral Heriz.

Defendants concede that Marcy and Nepal Carpets had access to an advertisement of plaintiff's Floral Heriz rug at the time the Bromley 514 was created and changed the large border of the Bromley 514 at least in part to distinguish it from the Floral Heriz's border. (Def's Rule 56.1 Stmt. at ¶ 13.) Moreover, the Bromley 514 contains the same combination of substantial elements from the Battilossi and Blau rugs, as well as the identical outside minor border with castle-like figures created by plaintiff and a second minor border with primitive stick figure animals, albeit with different animals than in the Floral Heriz. Although defendants claim they independently created the

Bromley 514 from the same public domain sources as plaintiff, they have no explanation for incorporating virtually the same two minor borders created by plaintiff in the same order as plaintiff. Nor have defendants pointed to any third works which contain the same combination of public domain sources featured in the Floral Heriz in the same order.

It is beyond the realm of coincidence that defendants, having access to plaintiff's work, managed to create a work containing the identical, unorthodox combination of two unrelated rug styles (Persian and Indian Agra), culled from the same two public domain rugs, as well as two minor borders not derived from the public domain, one of stick figure animals and the other of castle-like figures, all in the same order. No reasonable jury could find that defendant did not copy plaintiff's Floral Heriz design. Having established copying, plaintiff must now demonstrate that defendants appropriated a material portion of protectible expression. *See Fisher–Price, Inc.,* 25 F.3d at 123.

IV. *Copying a Material Amount of Protectible Expression*

■ The test for determining whether defendants have copied a material amount of protectible expression is whether the two works are substantially similar. *Fisher–Price, Inc.,* 25 F.3d at 123 ("Parrotry does not always mean piracy . . . . The plaintiff must also show illegality, and that requires a sharper focus: the court must find a substantial similarity between the protectible elements of the two works."). Discerning whether the two works are substantially similar involves two different tests; where no public domain elements are involved, substantial similarity is determined from the perspective of the ordinary observer, but where a plaintiff's work incorporates elements from the public domain, the perspective of a more discerning observer is used. *See Boisson,* 273 F.3d at 272.

In this case, where there is a thin copyright due to plaintiff's incorporation of a substantial amount of public domain elements, the more discerning observer test is appropriate. *See, e.g., Hamil Am., Inc. v. GFI,* 193 F.3d 92, 102 (2d Cir.1999) (applying "more discerning ordinary observer test" where design included public domain elements); *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,* 166 F.3d 65, 70 (2d Cir.1999) ("[W]here the work contains both protectible and unprotectible elements, the test must be 'more discerning,' excluding the unprotectible elements from consideration."); *Folio Impressions,* 937 F.2d at 766 (applying more discerning ordinary observer test in comparing fabric designs containing uncopyrightable elements). Not all design infringement cases require the more discerning observer test, only those in which plaintiff's pattern contains unprotectable elements. *See Hamil Am.,* 193 F.3d at 101 ("*Folio Impressions* featured rather specialized facts, and provides no authority for the broad proposition that in comparing designs for copyright infringement, we are required to dissect them into their separate components, and compare only those elements which are themselves copyrightable.") (internal punctuation and citations omitted).

■ Application of the more discerning observer test does not mean that plaintiff must meet a higher burden in establishing substantial similarity. *Odegard, Inc. v. Costikyan Classic Carpets, Inc.,* 963 F.Supp. 1328, 1338 (S.D.N.Y. 1997). In all infringement cases, the ultimate determination is whether the two works are substantially similar in expression, measured qualitatively or quantitatively. *Ringgold v. Black Entm't Tel.,*

*Inc.*, 126 F.3d 70, 75 (2d Cir.1997). That determination can only be made by taking into account the totality of the expression plaintiff added to the unprotectible parts of the work. *See Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996, 1003 (2d Cir.1995) (Where plaintiff's work is derivative, what must be shown is substantial similarity between the original elements of the works.). Such analysis requires this Court to consider the total concept and feel of the two works, even though the more discerning observer test is the applicable standard in this case. *Boisson*, 273 F.3d at 272, citing *Knitwaves, Inc.*, 71 F.3d at 1003; Patry, 713–15 and Supp. at 121 ("The lay observer test is appropriate whether or not some elements of a work are unprotectible. An ordinary observer, after being instructed by a judge not to consider the unprotectible elements of a ... fabric design, is surely qualified to determine whether the protectible elements of two basic designs look substantially similar."). Thus, the substantial similarity determination is made by examining the visual copies of the works provided by the parties and by applying the more discerning observer test. *Folio Impressions*, 937 F.2d at 766 (substantial similarity involved a side-by-side visual comparison, not a credibility determination); *King v. Ames*, 179 F.3d 370, 376 (5th Cir.1999) (citing *Folio Impressions* aat 766). Examining the total concept and feel of the two works at issue is particularly important where, as here, it is an adapted aesthetic feel that forms the basis for plaintiff's derivative originality.

■ The protectible elements of plaintiff's work include removal of certain elements to create open space, the asymmetrical pattern, the elongation of the design adapted from the body of the Battilossi rug, the adaptation of the Blau rug border, the creation of the castle and stick figure animal borders, and the ordering and placement of all of these elements into a harmonious whole, which creates an overall aesthetic appearance that is a distinguishable variation from the public domain Battilossi and Blau designs.

In comparing the parties' works, this Court must factor out the prominent public domain elements incorporated into Floral Heriz. These elements play a significant role in the overall appearance of plaintiff's work, even if plaintiff has managed to create a distinguishable variation thereon: the original, public domain aesthetic nevertheless still predominates. Since plaintiff's copyright does not extend to those public domain elements, *see* 17 U.S.C. § 103(b), failure to factor them out would grant plaintiff protection to public domain elements that the public has a right to copy. Of particular importance in this regard is defendant's decision to retain the symmetrical balance of the public domain Battilossi. Tufenkian testified at his deposition that his ultimate goal was to create an "all-over design ... [with] no central focus," (Tufenkian Dep. at 44), which he achieved by altering the symmetry of the Battilossi to be asymmetrical. (Tufenkian Dep. at 43.) This asymmetry is a central element of plaintiff's derivative originality, yet it was not copied by defendant. Such asymmetry can not support plaintiff's claim of derivative originality and then be ignored at the infringement stage of the analysis.

In addition, this Court must take into account those elements which are original to defendants. Defendants had the same right as plaintiff to plumb the public domain, make its own original alterations thereto, and to claim copyright in those alterations. Any such elements created by defendants must also be factored out in the substantial similarity analysis. Applying the governing legal standard to the facts in this case, after a careful comparison of the public domain sources and the

parties' own contributions to their respective works, this Court finds as a matter of law that defendants have not copied a material amount of expression from plaintiff. Given the visual nature of the works in question and the need to conduct a careful comparison among four different works (two public domain and the parties' works), any written description cannot adequately capture the totality of the comparison undertaken by this Court. Indeed, at this Court's request, the parties brought the full-sized rugs into court so that this Court could better undertake the necessary visual comparison. The following differences lead ineluctably to the conclusion that the Bromley 514 is not substantially similar to the Floral Heriz: (1) Defendants' design is symmetrical, while plaintiff's is asymmetrical, a difference which creates substantial changes in the total concept and feel of the two works, given that both are substantial copies of the public domain Battilossi; (2) defendants incorporated flower elements in the center field not found in plaintiff's design; (3) plaintiff's center field design contains more lines than defendants'; (4) the anchor "beetle" shapes, leaf and sun patterns in the parties' respective primary borders are markedly different; and (5) plaintiff's primary border includes more colors and more elements giving it a more complex overall feel than defendants' work. (*Compare* App. 1 and App. 4.)

In sum, defendants made significant changes in the two public domain works, adding their own creative judgment, resulting in a design that is equally as appealing as plaintiff's. The Bromley 514's overall aesthetic is due to the public domain sources and to defendants' own efforts. This Court appreciates that defendants did copy, in modified form, a few elements original to plaintiff, but those elements (especially in their modified form) do not change the different total concept and feel of the two works. This Court further appreciates that it is unlikely that defendants would have created their own work had plaintiff not come up with the idea of combining the public domain Battilossi and the public domain Blau, but ideas are not protectible, no matter their value or novelty. As Judge Leval observed in *Attia v. Society of the New York Hosp.*, 201 F.3d 50, 53–54, 56 (2d Cir.1999):

> [N]ot all copying from copyrighted material is necessarily an infringement of copyright. There are elements of a copyrighted work that are not protectible even against intentional copying. It is a fundamental principle of our copyright doctrine that ideas ... are not protected from copying.

> We may assume with Plaintiff that the ideas taken, or at least some of them, are powerful, dynamic ideas of immense value .... Under the law of copyright, however, the power of an idea does not improve the creator's right of preventing copying.

Judge Newman also cautioned that "[c]ourts have an important responsibility in copyright cases to monitor the outer limits within which juries may determine reasonably disputed issues of fact. If a case lies beyond those limits, the contrary view of [a jury] cannot be permitted to enlarge (or diminish) the scope of statutory protection enjoyed by a copyright proprietor." *Warner Bros.*, 720 F.2d at 240. This is such a case.

Plaintiff's work is an adaptation of public domain sources. Defendant went to the same sources (and to plaintiff's work) and made a work which is substantially similar only with respect to the common public domain sources, sources which predominate both works. Such similarity cannot as a matter of law support a finding of infringement. Accordingly, plaintiff's summary judgment motion is denied, and defendants' summary judgment motion is granted.

## V. *Fraud on the Copyright Office*

■ Fraud on the Copyright Office occurs only when the claimant fails to advise the Copyright Office of facts which might have led to rejection of the application. *Fonar*, 105 F.3d at 105; *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 456 (2d Cir.1989); *Gibson Tex, Inc.*, 11 F.Supp.2d at 443. An inherent problem in determining whether plaintiff has committed fraud on the Copyright Office is that the court is in essence asked to read the Copyright Office's mind without the benefit of its views. The peril of undertaking this exercise was recently pointed out by the Copyright Office in a policy statement it issued in response to the Third Circuit's mistaken invalidation of a registration over the manner in which the claimant filled out Space 1 of the application, the "nature of the work." *See Registration of Claims to Copyright*, 65 Fed Reg. 41508 (Jul. 5, 2000).

This Court is required to resolve all factual inferences against the non-movant, and on the record before it, this Court cannot find as a matter of law that plaintiff knowingly failed to advise the Copyright Office of the public domain sources. *See Gibson Tex, Inc.*, 11 F.Supp.2d at 443 (declining to find fraud on the Copyright Office on a motion for summary judgment). Accordingly, defendants' motion for summary judgment on the issue of fraud on the Copyright Office is denied.

Finally, no defendant has asserted any counterclaim in this action; the fraud on the Copyright Office allegation was pled as an affirmative defense. (*See* Ans. to Third Am. Comp. at 4; Ans. of Marcy and Noreen Seabrook Marketing at 3.) Thus, it does not exist as an independent claim. *See Beckman v. United States Postal Service*, 79 F.Supp.2d 394, 407 (S.D.N.Y.2000) (noting that it is inappropriate to raise new claims in summary judgment submissions). Accordingly, as there are no remaining unresolved claims in this action, this case is closed.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted and plaintiff's is denied. The Clerk of the Court is directed to close this case.

SO ORDERED:

Appendix 1

Floral Heriz

Appendix 2

Battilossi

North West Persia, Heriz area
19th century, 205 × 320 cm

# *BATTILOSSI*
## *tappeti d'antiquariato*

## Appendix 3

### Blau Indian Agra

An Indian Agra carpet, measuring 14.9 x 11.9, whose majesty and excitement are as evident to the eye as its quality. The darkness of the field enhances both the scale of design and the richness of its palette. The major border, on its oatmeal ground, becomes a perfect frame for the piece

*This gallery features an eclectic array of room size carpets and small collector pieces of outstanding merit in Oriental and European weaves.*

*An Appointment Is Suggested*

ANTIQUE AND EXEMPLARY CARPETS
AND TAPESTRIES
in New York
at 15 East 57th Street
212-759-3715

*A Dealer Interested in this Art Form in Action*

56R

Appendix 4

Bromley 514

**Bromley Hall**

Tibetan (514) Black—T112
Country of Origin Nepal
Sizes: 4x6, 6x9, 8x10, 9x12, 10x14