338 F.3d 127
 TUFENKIAN IMPORT/EXPORT VENTURES, INC., Plaintiff-Appellant,
v.
EINSTEIN MOOMJY, INC., Bashian Brothers, Inc., A.L. Meyers Furniture, Central Carpet Co., Kenneth L. Mink & Sons, Inc., Home Depot, Inc., Michael Nichols-Marcy, and Noreen Seabrook Marketing, Inc., Defendants-Appellees.
 No. 02-7623.
 United States Court of Appeals, Second Circuit.
 Argued: January 29, 2003.
 Decided: July 30, 2003.
 
 COPYRIGHT MATERIAL OMITTED ROBERT W. CLARIDA, Cowan, Liebowitz & Latman, New York, NY, for Plaintiff-Appellant.
 LAWRENCE D. MANDEL, Mandel & Peslak, LLC, Freehold, NJ; Arthur M. Peslak, Mandel & Peslak; David A. Jackson, Klauber & Jackson, Hackensack, NJ; William Patry, Baker Botts, New York, NY; Marsha Ajhar, Abelman, Frayne & Schwab, New York, NY, on the brief) for Defendants-Appellees.
 Before: OAKES, CALABRESI, and SOTOMAYOR, Circuit Judges.
 CALABRESI, Circuit Judge.
 
 
 1
 This copyright infringement case involves two textile designs, each of which combines, with modifications, the "primary border" and the "half field" of two unrelated public domain carpets, one a classical Indian Agra and the other a Persian antique. Viewed uncritically, the two designs at issue are substantially similar. For the defendant's rug to infringe upon the plaintiff's design, however, the defendant's composition must be substantially similar to that which is original in the plaintiff's expression. The district court (S.D.N.Y., Pauley, J.) found no infringement, concluding as a matter of law that whatever substantial similarity there may be emerges from unprotected public domain materials in the allegedly infringed design. See Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc., 237 F.Supp.2d 376 (S.D.N.Y.2002). We disagree.
 
 BACKGROUND
 
 2
 In March 1995, James Tufenkian, a designer and manufacturer of Tibetan style carpets, filed a copyright registration for the "Floral Heriz" ("Heriz") carpet design that is the subject of this lawsuit. He had composed the Heriz two years earlier by scanning into his computer two public domain images, one of the "Battilossi" carpet (a Persian antique), the other of the "Blau" carpet (an Indian Agra, designed by Dorris Blau). The field of the Battilossi rug is a dense, bilateral symmetrical design of stylized branching-vine, leaf and flower motifs. Tufenkian selected roughly the central third of the upper[1] half of this Battilossi field. From this dense pattern, he culled out a number of motifs. He then stretched the field slightly in one direction and used the thus modified design as the entire field of the Heriz. In the process, Tufenkian created an asymmetrical pattern, for he used only an off-center portion of what had been a symmetrical design. From the Blau, he took the principal border, which, with modifications, became the major border of the Heriz. Finally, he added two minor borders of his own creation. One of these consists of stick-figure animals, the other of even simpler, castlelike figures.
 
 
 3
 Tufenkian describes his principal creative contributions as: (1) combining two unrelated rug styles; (2) designing and adding the minor borders; (3) selectively removing entire design motifs from the Battilossi so as to create a more `open' aesthetic from those remaining; (4) converting the symmetrical Battilossi image into a design "with no central focus" (by copying from only half of the Battilossi field); and (5) elongating the Battilossi pattern.
 
 
 4
 Sometime in 1995, Appellee Bashian retained Appellee Nichols-Marcy, who had worked for Tufenkian, to oversee the designing of the "Bromley 514" ("Bromley"). Nichols-Marcy and his Nepalese contractors began work on the Bromley in early 1996, two years after the Heriz was first marketed. These designers were familiar with the Heriz, and the appellees do not challenge the district court's determination that some copying of the Heriz actually occurred.
 
 
 5
 Nonetheless, the appellees contend that the Heriz's extensive use of designs taken from the public domain combined with the Bromley's distinctiveness precludes a finding of infringement. In the latter regard, they point to the following as instances of their own creative work that distinguishes the Bromley from the Heriz: (1) addition of a second "beetle" (or "flower") element to the field, placed in a roughly symmetrical position to an existing "beetle" shape so as to give the Bromley a more balanced feel than the Heriz; (2) retention of a "leaf shape" from the Battilossi that Tufenkian did not include in the Heriz; (3) removal of a vine-like line segment from the Battilossi that Tufenkian had retained; and (4) greater modification of the Blau border design, with "different shapes at different angles."
 
 
 6
 In November 1999, Tufenkian initiated this lawsuit, claiming copyright infringement and seeking various injunctive and monetary remedies. Both parties moved for summary judgment on the issue of copyright infringement.[2] The district court concluded that "Tufenkian infused [the Heriz] with sufficient originality to support copyright protection," Tufenkian, 237 F.Supp.2d at 384; that Bashian actually copied the Heriz, id. at 385-86; but that the Bromley 514 was not substantially similar to protected expression in the Heriz, id. at 386-88. The court therefore awarded summary judgment to Bashian.
 
 
 7
 The district court evaluated infringement by comparing the two designs' "total concept and feel" (or "overall aesthetic"). In so doing the court applied what we have called the "more discerning observer" test, Boisson v. Banian, Ltd., 273 F.3d 262, 271 (2d Cir.2001), a test intended to emphasize that substantial similarity must exist between the defendant's allegedly infringing design and the protectible elements in the plaintiff's design. Noting that "the prominent public domain elements incorporated into Floral Heriz ... play a significant role in the overall appearance of plaintiff's work," the district court "factor[ed] out" those elements from the substantial similarity comparison, explaining that to do otherwise "would grant plaintiff protection to public domain elements that the public has a right to copy." Id. at 387. Nonetheless, the court specified that the Heriz contained various `protectible elements' including: "[the] removal of certain elements to create open space, the asymmetrical pattern, the elongation of the design adapted from the body of the Battilossi rug, the creation of the castle and stick figure animal borders, and the ordering and placement of all of these elements into a harmonious whole...." Id. The district court further stated that it would also factor out "those elements which are original to defendants," among these the fact that "defendants incorporated flower elements in the center field not found in plaintiff's design."[3] Id. at 387-88.
 
 
 8
 Having identified the plaintiff's and the defendants' original contributions, the district court concluded that a finding of lack of infringement was "ineluctabl[e]": "[t]he Bromley 514's overall aesthetic is due to the public domain sources and to defendants' own efforts," rather than to any copying of protectible aspects of the Heriz. Id. at 388. To illustrate the lack of substantial similarity, the district court recited a number of differences between the rugs, including the fact that "[d]efendants' design is symmetrical, while plaintiff's is asymmetrical, a difference which creates substantial changes in the total concept and feel of the two works, given that both are substantial copies of the public domain Battilossi." Id. While the district court "appreciate[d] that defendants did copy, in modified form, a few elements original to plaintiff," the court concluded that "those elements (especially in their modified form) do not change the different total concept and feel of the two works." Id.
 
 DISCUSSION
 I.
 A. Standard of Review
 
 9
 We review a summary judgment of non-infringement de novo. Williams v. Crichton, 84 F.3d 581, 587 (2d Cir.1996). Our familiar task is to determine "whether a genuine issue as to any material fact exists and whether the moving party was properly entitled to judgment as a matter of law." Arica Inst., Inc. v. Palmer, 970 F.2d 1067, 1071 (2d Cir.1992) (internal quotation marks omitted). "In making this determination, we view all inferences in the light most favorable to the non-moving party...." Id.
 
 B. The Test for Copyright Infringement
 
 10
 "Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying." Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc., 150 F.3d 132, 137-38 (2d Cir. 1998) (internal quotation marks omitted). To demonstrate unauthorized copying, the plaintiff must first "show that his work was actually copied"; second, he must establish "substantial similarity" or that "the copying amounts to an improper or unlawful appropriation," i.e., (i) that it was protected expression in the earlier work that was copied and (ii) that the amount that was copied is "more than de minimis." Id. at 137-38. The defendant can defeat a prima facie showing of infringement by proving that the doctrine of "fair use" permits her employment of the plaintiff's design. Id. at 141-46. In the appeal before us, however, the defendants do not mount a fair use defense, nor do they contest the district court's findings of ownership and actual copying. Substantial similarity is therefore the only issue we face. But substantial similarity, we emphasize again, must be to that which is protected in the plaintiff's work.
 
 
 11
 C. The Scope of Copyright Protection: Original Expression
 
 
 12
 "[O]riginality is `the sine qua non of copyright,'" Boisson, 273 F.3d at 268 (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)).[4] It is universally true, however, that even works which express enough originality to be protected also contain material that is not original, and hence that may be freely used by other designers. This is not simply an artifact of some rather lenient caselaw on the originality requirement. Cf. Matthew Bender & Co. v. West Publ'g Co., 158 F.3d 674, 680 (2d Cir.1988) (suggesting that original expression may require only "some minimal level of creativity" (quoting Feist, 499 U.S. at 358, 111 S.Ct. 1282)). The principle is more fundamental: all creative works draw on the common wellspring that is the public domain.
 
 
 13
 In this pool are not only elemental "raw materials," like colors, letters, descriptive facts, and the catalogue of standard geometric forms, but also earlier works of art that, due to the passage of time or for other reasons, are no longer copyright protected. Thus the public domain includes, for example, both the generic shape of the letter "L" and all of the elaborately more specific "L's" from the hundreds of years of font designs that have fallen into the public domain. See Boisson, 273 F.3d at 269-71 (considering copyright infringement in "alphabet quilts," and treating the letters of the alphabet and the spectrum of colors as belonging to the public domain); cf. Streetwise Maps, Inc. v. Vandam, Inc., 159 F.3d 739, 747 (2d Cir.1998) (refusing to grant copyright protection to "street locations, landmass, bodies of water and landmarks depicted in a map"); Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 763-64 (2d Cir.1991) (holding that the plaintiff's fabric-design copyright did not encompass a background pattern copied without modification from a public domain textile); Williams, 84 F.3d at 587 (examining substantial similarity between literary works and excluding "scenes a faire," i.e., "sequences of events that `necessarily result from the choice of a setting or situation,'" from the scope of the plaintiff's protectible expression (quoting Walker v. Time Life Films, Inc., 784 F.2d 44, 50 (2d Cir.1986))).
 
 
 14
 D. Conundrums of Infringement by Inexact Copies
 
 
 15
 It has long been settled that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate," Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir.1936) (Hand, J.), and this aphorism applies equally to exact reproduction of visual works. As a result, a would-be appropriator who wishes to test the limits of copyright law gains nothing from "adding on" to what she has precisely reproduced. But she might prevail insofar as her work transforms the copied expression into a design that in some respects resembles the original, yet does not actually excerpt ("cut and paste") a more-than-de-minimis protected portion of the original. Such designs may be termed "inexact copies," in recognition of the fact that they alter the prior image yet mimic its structure in some fashion.[5] Jurists have long been vexed by the task of precisely identifying that which separates inexact copies that infringe from those that do not.[6]
 
 
 16
 In recent years we have often found it productive to assess claims of inexact-copy infringement by comparing the contested design's "total concept and overall feel" with that of the allegedly infringed work. Because this was the method used by the district court, and because the appellant sharply disputes the district court's "total concept and feel" analysis, a few remarks on the history and application of this test are in order.
 
 
 17
 Our circuit first employed the "total feel" nomenclature in a case involving children's books. See Reyher v. Children's Television Workshop, 533 F.2d 87, 91-92 (2d Cir.1976). Reyher characterized this Court's previous treatment of inexact copying of books, movies, and plays as concerned with the "the `pattern' of the work[, i.e.,] the sequence of events and the development of the interplay of characters." Id. at 91 (quoting Zechariah Chafee, Reflections on the Law of Copyright, 45 Colum. L.Rev. 503, 513-14 (1945)). But the children's books at issue in Reyher were "necessarily less complex" than the works we had previously submitted to "pattern" analysis, and, moreover, the sequence of events in the plaintiff's book consisted of little more than "scenes a faire" attendant to an underlying idea that was shared with the defendant's work. Id. at 91-92. In all respects other than the sequence of events, the works were very different:
 
 
 18
 Reyher's book presents a picture of family life in the Russian Ukraine and develops the characters of the little girl and her mother. The [defendant's] story is barren of meaningful setting or character development in its attempt to present its theme. The two stories are not similar in mood, details or characterization.
 
 
 19
 Id. at 92. Summarizing, we said the works differed in their "total feel." Id.
 
 
 20
 In Reyher, "total feel" functioned as a shorthand way of explaining that — while a children's story whose sequence of events is not protected might nonetheless be infringed by other forms of inexact copying — no such copying was present in the allegedly infringing work. See also Eden Toys, Inc. v. Marshall Field & Co., 675 F.2d 498, 500-01 (2d Cir.1982) (explaining the divergent "total concept and feel" of two toy snowmen with reference to a host of specific differences in the designs).
 
 
 21
 Some commentators have worried that the "total concept and feel" standard may "invite[] an abdication of analysis," because "feel" can seem a "wholly amorphous referent." Melville B. Nimmer & David Nimmer, 4 Nimmer on Copyright § 13.03[A][1][c] (2003). Likewise, one may wonder whether a copyright doctrine whose aspiration is to protect a work's "concept" could end up erroneously protecting "ideas." But our caselaw is not so incautious. Where we have described possible infringement in terms of whether two designs have or do not have a substantially similar "total concept and feel," we generally have taken care to identify precisely the particular aesthetic decisions — original to the plaintiff and copied by the defendant — that might be thought to make the designs similar in the aggregate. This is evident from Reyher and Eden Toys, supra, and also from our more recent textile-infringement decisions. Thus in Knitwaves v. Lollytogs Ltd., we explained:
 
 
 22
 Lollytogs has chosen to feature the same two fall symbols that Knitwaves used, leaves and squirrels. Not only do Lollytogs' renderings of these symbols substantially resemble Knitwaves' renderings, but Lollytogs has employed them in virtually the same manner as Knitwaves has (as felt appliques stitched to the sweaters' surface); on strikingly similar backgrounds ("shadow-striped" for the Leaf Sweater, and four-paneled for the Squirrel Cardigan); and in virtually the same color scheme.
 
 
 23
 71 F.3d 996, 1004 (2d Cir.1995). Cf. Boisson, 273 F.3d at 273-74 (finding infringement on the basis of protectible and similar combinations of letters, colors and patterns in two alphabet rugs — in sum, on the basis of the "enormous amount of sameness" between the two designs).[7]
 
 
 24
 Essentially, the total-concept-and-feel locution functions as a reminder that, while the infringement analysis must begin by dissecting the copyrighted work into its component parts in order to clarify precisely what is not original, infringement analysis is not simply a matter of ascertaining similarity between components viewed in isolation.[8] For the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art — the excerpting, modifying, and arranging of public domain compositions, if any, together with the development and representation of wholly new motifs and the use of texture and color, etc. — are considered in relation to one another. The court, confronted with an allegedly infringing work, must analyze the two works closely to figure out in what respects, if any, they are similar, and then determine whether these similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in original that is free for the taking.
 
 II.
 
 25
 The appellant charges that, in comparing the two designs' total concept and feel, the district court improperly factored out public domain elements from the Heriz and the Bromley. As the above discussion of doctrine indicates, however, the court was surely correct to factor such elements out.[9] For copying is not unlawful if what was copied from the allegedly infringed work was not protected, for example, if the copied material had itself been taken from the public domain. This principle applies, moreover, whether the copied, unprotected expression at issue is a selection, coordination, or arrangement of elements, or whether it is the exact design itself.
 
 
 26
 But in its comparison of the two rugs, the district court failed to consider — apart from total concept and feel — whether material portions of the Bromley infringed on corresponding parts of the Heriz. Here the court erred. See generally 3 Nimmer on Copyright § 13.03[A][1][c] ("`[T]otal concept and feel' should not be viewed as a sine qua non for infringement — similarity that is otherwise actionable cannot be rendered defensible simply because of a different `concept and feel.'" (footnotes omitted)).
 
 
 27
 What makes this case perplexing is that, to the judicial observer who has a passing familiarity with carpet design, many of the plaintiff's expressive choices may seem to be rather mechanical or conventional acts, which might be deemed to be either non-original or else so weakly original that their copying would appropriate no more than a de minimis amount of protected expression.[10] Consider, for example, the cropping and elongating of the Battilossi half-field so as to create a typical "longer than wide" field for the Heriz; the use of one primary and two minor borders; the proportions between borders and field; and the design of the outer minor border. On the other hand, the record contains little evidence of what is conventional (and hence, by analogy to "scenes a faire," unprotected) in these respects.
 
 
 28
 Even the Heriz's pairing of the Battilossi half-field with the Blau-derived border was, arguably, a fairly simple exercise. One might contend that the pairing is too minor to surmount even the low threshold for copyright protection, or else conclude that it is protected only against very close copies.[11] The question of infringement thus might be thought to turn on subtle differences in the Heriz and Bromley adaptations of the Blau border.
 
 
 29
 Whether the Bromley infringes on the Heriz, however, need not depend on variation between the primary borders, or on a determination of the extent to which various features of the Heriz design are conventions. There is one substantial respect in which the creator of the Heriz made distinctly idiosyncratic and particular design decisions — decisions whose effect permeates the entire field of the Heriz — and in this respect the Bromley is a virtually exact copy of the Heriz. The plaintiff not only cropped and elongated the Battillossi half-field, he also selectively eliminated numerous design motifs, creating a more open, less busy aesthetic.
 
 
 30
 Of course, mere simplification of an ornate public domain carpet into a mass market knock-off may not be protectible.[12] But the plaintiff's half-field modification was not a uniform or homogeneous simplification akin to removing all serifs from a font, blurring the petals on all flowers, or eliminating every third leaf on a stem. Rather, the plaintiff seems to have engaged in a selective and particularized culling of a leaf here, a complex of leaves and flowers there, and so forth. And close visual inspection of the two rugs confirms that the Bromley precisely mimics the Heriz in nearly all of these choices.
 
 
 31
 This non-mechanical adaptation of individually unprotectible elements from the public domain is precisely the type of "original selection" that the Supreme Court indicated was protectible expression in Feist. There, the Court clarified that a telephone directory contained protectible expression insofar as the compiler had "selected, coordinated, or arranged [its] uncopyrightable facts in an original way." 499 U.S. at 362, 111 S.Ct. 1282. The Court cautioned, however, that the protection given is "thin," id. at 349, 111 S.Ct. 1282, because the scope of the copyright "is limited to the particular selection or arrangement," and a "subsequent [author] remains free to use [the public domain elements] to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement," id. at 349-51, 111 S.Ct. 1282.[13]
 
 
 32
 We conclude that this is one of those relatively unusual cases in which the infringing work has copied the original and "particular" or "same" selections embodied in the allegedly infringed upon work. The number of motifs present (or absent) in the Bromley field which mirror those the Heriz selected (or deleted) in an original way from the Battilossi is overwhelming. And the structural layout of these elements is essentially the same in both designs.
 
 
 33
 It should be noted that while the Bromley field is based on a near-exact copy of the Heriz's original selections from the Battilossi, the Bromley does depart from the Heriz in one salient respect. Specifically, the Bromley field has a second, anchoring "beetle" or "flower" element, which conveys a sense of balance that is absent in the Heriz. This addition, and the resulting faux symmetry, was important to the district court's determination that the "total concept and feel" of the Bromley was not substantially similar to that of the Heriz. See Tufenkian, 237 F.Supp.2d at 387-88. Whatever the possible relevance of the Bromley's second beetle element to a comparison of the two rugs' "overall feel" — an issue we need not decide today — this addition does not alter the fact that the rest of the Bromley field is a near-exact copy of the Heriz field, and therefore infringing. To hold otherwise would be rather like holding that one who closely copies a long poem can do so without prima facie infringement if she replaces one (admittedly significant) stanza with verse of her own invention and thereby alters the poem's "feel." Cf. Sheldon, 81 F.2d at 56 ("[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate.")[14]
 
 III.
 
 34
 For the forgoing reasons, we hold that the Bromley is substantially similar to the Heriz. We therefore VACATE the judgment of the district court and REMAND for further proceedings.[15] On remand the district court may consider the defense of fraud on the copyright office. If that defense proves unavailing, and if other defenses are waived or do not prove meritorious, the court should enter judgment for the plaintiff and proceed to determine the appropriate remedies.
 
 
 
 Notes:
 
 
 [1]
 Or of the lower half, since the two are identical
 
 
 [2]
 Bashian also moved for summary judgment on a fraud on the copyright office affirmative defense based on Tufenkian's failure to identify the Heriz as a derivative work in his copyright registration certificate. The district court held that this defense presented a genuine issue of material fact, but in view of its grant of summary judgment to Bashian on other grounds, did not proceed further with this claim
 
 
 [3]
 In the end, however, an element added by the defendant figured prominently in the court's finding of non-infringement. The defendants' rug has a second anchoring beetle or flower element in the field, which imparts a balanced feel to the design, in contrast to the plaintiff's more "asymmetric" creationTufenkian, 237 F.Supp.2d at 387.
 
 
 [4]
 While necessary to copyright protection, however, originality is not a sufficient condition for such protectibility. Not everything original to a copyrighted work is protected. Thus, for example, because copyright law defends only "expressions" and not "ideas," the concepts underlying an expression, however ingenious, remain free for anyone's taking. Likewise, the copyright on a work whose design reflects the artist's original advance in technique does not extend to the technical development itselfSee 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."). Finally, even original expression goes unprotected insofar as it is "necessary" to something unprotectible like an idea or a method or process. The expression is then said to merge with the unprotected attribute, and the merger deprives it of protection. See Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 707 (2d Cir.1992) (examining substantial similarity in computer programs and applying a filtration process that "entails examining the structural components... to determine whether their particular inclusion... was [a)] `idea' or ... dictated by considerations of efficiency, so as to be necessarily incidental to that idea; [b)] required by factors external to the program itself; or [c)] taken from the public domain").
 
 
 [5]
 Our intention in using the term "inexact copies" is to describe a manner of visual copying analogous to the textual copying that is described in Nimmer as "non-literal." Melville B. Nimmer & David Nimmer, 4 Nimmer on Copyright § 13.03[A][1] (2003). We recognize, of course, that these designs may feature much that is new, in addition to whatever may be said to be original in the "inexact copy." Terming such a design an "inexact copy" is simply a means of drawing attention to the portion of the design that is relevant to a charge of infringement
 
 
 [6]
 Cf. Nichols v. Universal Pictures Corp., 45 F.2d 119, 121 (2d Cir.1930) (Hand, J.) ("Upon any work ... a great number of patterns of increasing generality will fit equally well, as more and more of the incident is left out. The last may perhaps be no more than the most general statement of what the [work] is about ... but there is a point in the series of abstractions where they are no longer protected....").
 
 
 [7]
 Knitwaves and other recent cases portray this Circuit's protection of a complex work's "total concept and feel" as a necessary result of the Supreme Court's statement in Feist, 499 U.S. at 350, 361-64, 111 S.Ct. 1282, that compilations of unprotectible elements merit copyright protection insofar as they contain an original and non-mechanical selection, coordination or arrangement of those elements. See Boisson, 273 F.3d at 272-73; Streetwise Maps, 159 F.3d at 748; Knitwaves, 71 F.3d at 1003-04.
 
 
 [8]
 Ascertaining the "component parts" of the work is, of course, a case-specific inquiry that begins by considering what is distinctive about a given design. The process is well illustrated inBoisson, 273 F.3d at 272-75.
 
 
 [9]
 What the district court meant to do by "factoring out" the defendant's original contributions is a little obscure. In view of our vacatur on other grounds, however, we need not consider whether that factoring out was correct
 
 
 [10]
 Furthermore, one apparently original element in the plaintiff's design — the inner minor border — is not closely reproduced in the Bromley. True, like the Heriz, the Bromley uses a stick-figure motif in its inner border, but the Bromley stick figures are not particularly similar to their counterparts in the Heriz
 
 
 [11]
 In suggesting these possibilities, we note only that they are arguable, and we express no opinion as to whether the arguments, if made, would prove correct. We do believe, however, that the district court probably erred in categorically dismissing as an unprotected "idea" the plaintiff's combination of the Battilossi half-field and Blau-ish border. The plaintiff'sparticular combination of these two rugs is an expression, albeit one protected by a thin copyright. Cf. Beaudin v. Ben & Jerry's Homemade, Inc., 95 F.3d 1, 2 (2d Cir. 1996) ("Where the quantum of originality is slight and the resulting copyright is `thin,' infringement will be established only by very close copying....").
 
 
 [12]
 Compare in this regard the use of the "merger" doctrine inComputer Assocs. Int'l, 982 F.2d at 707-10 (applying "merger" doctrine to computer code features dictated by efficiency and external functional constraints).
 
 
 [13]
 There may arise visual-arts cases in which the "selection, coordination, and arrangement" of public domain elements is so aesthetically complex and sophisticated that the copyright is more than "thin." As mediums of expression, mosaic and montage can support artistry of high order. But in the case before us the selective deletion of elements from the Battilossi, while idiosyncratic, was relatively simple and supports only a thin copyrightCf. Beaudin, 95 F.3d at 2.
 
 
 [14]
 One might, of course, conceive of a case in which the defendant's new elements "blot out" or otherwise so thoroughly obscure copied original expression as to render the copying insignificant and the defendant's product noninfringingCf. Ringgold v. Black Entm't Television, Inc., 126 F.3d 70, 77 (2d Cir.1997) (speculating, in a case that found infringement based on the defendant's use of the plaintiff's paintings in the backdrop of a television set, that "[i]n some circumstances, a visual work, though selected by production staff for thematic relevance, or at least for its decorative value, might ultimately be filmed at such a distance and so out of focus that a typical program viewer would not discern any decorative effect that the work of art contributes to the set"). But this is not such a case. Similarly, we need not today consider whether an altered poem, such as that described in text, could constitute fair use.
 
 
 [15]
 Costs on appeal will be awarded to the appellant