**GOTTLIEB DEVELOPMENT LLC, Plaintiff,**

v.

**PARAMOUNT PICTURES CORPORATION, Defendant.**

**No. 08 Civ. 2416 (DC).**

United States District Court, S.D. New York.

Dec. 29, 2008.

Gabriel Fischbarg, Esq., New York, NY, for Plaintiff.

Arnold & Porter LLP, by Peter L. Zimroth, Esq., James B. Swire, Esq., Eleanor M. Lackman, Esq., New York, NY, for Defendant.

## OPINION

CHIN, District Judge.

In the motion picture "What Women Want," released by defendant Paramount Pictures Corporation ("Paramount") in 2000, Mel Gibson plays an advertising executive who acquires the ability to "hear" what women are thinking. In one scene, Gibson and his co-star Helen Hunt brainstorm with other employees to develop ideas for marketing certain consumer products to women. At various points during the scene, as shown, for example, in the photograph above, a pinball machine—the "Silver Slugger"—appears in the background. The Silver Slugger is distributed by plaintiff Gottlieb Development LLC ("Gottlieb"), and Paramount used the pinball machine in the scene without Gottlieb's permission.

In this case, Gottlieb sues Paramount, alleging that Paramount engaged in copyright and trademark infringement, unfair competition, and deceptive trade practices by using the Silver Slugger in the movie without Gottlieb's permission. Paramount moves to dismiss the complaint pursuant to Fed. R. Civ. P, 12(b)(6), arguing principally that its use of the pinball machine was *de minimis* and therefore not actionable. I agree. Accordingly, Paramount's motion is granted and the complaint is dismissed.

## BACKGROUND

### A. The Facts

The facts alleged in the complaint and set forth in the exhibits incorporated therein by reference are assumed to be true for purposes of this motion. They are as follows:

### 1. The Silver Slugger

Gottlieb distributes and sells the "Silver Slugger" pinball machine. (Complaint ("Compl.") ¶¶ 4, 9–11 & Ex. A). The Silver Slugger features three original designs (the "Designs"): (1) a depiction of a baseball diamond on the backglass, which is the upright back portion of the pinball machine; (2) another baseball diamond on the playfield, which is the playing surface of the machine; and (3) the layout of the parts of the playfield. (*Id.* ¶ 4 & Ex. A). The Designs are copyrighted, and Gottlieb has owned the copyrights since 1998. (*Id.* ¶ 4).

The trademark GOTTLIEB also appears on the Silver Slugger, in several places. (*Id.* ¶ 9 & Ex. A). Gottlieb has owned the mark since 1998, and Gottlieb and its predecessors have used the mark in interstate commerce continuously since 1985. (*Id.* ¶¶ 9, 10).

### 2. The Film

In December 2000, Paramount released the motion picture "What Women Want" (the "Film"). (*Id.* ¶ 5). Paramount has shown the Film in theaters and sold and otherwise distributed it worldwide since then on DVD and VHS tapes and on television. (*Id.*). The Film is a romantic comedy starring Gibson and Hunt. Gibson plays an advertising executive who unexpectedly gains the ability to hear the thoughts of the women around him.[1] The

---

1. A DVD copy of the Film is attached to the Declaration of Eleanor M. Lackman, dated July 11, 2008 ("Lackman Decl."), as Exhibit E. As the Film is referred to in the complaint and is integral to Gottlieb's claims, it is deemed incorporated into the complaint by reference. Hence, I consider it on this motion to dismiss. *See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir.

2004); *accord Int'l Audiotext Network v. AT & T*, 62 F.3d 69, 72 (2d Cir.1995) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.").

Film runs for a little over two hours, and the scene at issue occurs approximately thirty-seven minutes into the Film.

The three-and-a-half minute scene depicts a brainstorming meeting in the office of the advertising agency. The meeting takes place in a large room with a relaxed and casual atmosphere—the room contains recliner chairs and bar stools, and on the far wall there is a large poster board prominently displaying the word "PLAY." A mini basketball hoop appears on one side of the room, and a statue of a penguin appears on the other. Approximately eight people are sitting in a circle. Behind one woman is a table soccer—or "foosball"—game. As Gibson's character pitches various ideas for advertisements, the "Silver Slugger" appears intermittently in the background, next to another pinball machine. It appears only for seconds at a time, always in the background, and always partially obscured by Gibson, a recliner chair, or a bar stool. The "Silver Slugger" does not appear in any shot by itself, nor is it part of the plot. It does not appear anywhere else in the Film, nor does any character ever refer to it. It is simply part of the background in one limited scene.

### B. *Prior Proceedings*

Gottlieb commenced this action against Paramount by filing a summons and complaint on March 10, 2008. The complaint contains five causes of action: (1) copyright infringement under the Copyright Act, 17 U.S.C. § 501 et seq.; (2) trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair competition under New York common law; (4) unjust enrichment under New York law; and (5) deceptive trade practices under the New York State General Business Law, N.Y. Gen. Bus. Law § 349. The complaint asserts a sixth cause of action for injunctive relief.

The complaint alleges that Paramount infringed Gottlieb's copyrights in the Designs by using the Silver Slugger in the Film without its permission. (Compl. ¶¶ 5, 6). The complaint further alleges that Paramount infringed Gottlieb's trademark by using the mark in the Film "for approximately 3 minutes," without permission, in a manner that is "likely to cause confusion, to cause mistake and to deceive." (*Id.* ¶¶ 12, 13). The remaining causes of action are based on similar allegations. (*Id.* ¶¶ 21, 24, 27–28, 31).

This motion followed.

### *DISCUSSION*

### A. *Standard on a Motion to Dismiss*

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996); *see also Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2199, 167 L.Ed.2d 1081 (2007) (per curiam).

In its recent decision in *Bell Atlantic Corp. v. Twombly,* the Supreme Court announced the "retirement" of the oft-quoted "no set of facts" language from *Conley v. Gibson,* 355 U.S. 41, 45–47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and adopted in its place a "plausibility" requirement. 550 U.S. 544, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007). As interpreted by the Second Circuit, *Bell Atlantic Corp.* did not announce a "universal standard of heightened fact pleading, but ... instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007). The question is whether the pleading alleges " 'enough

facts to state a claim for relief that is plausible on its face.'" *Patane v. Clark,* 508 F.3d 106, 111–12 (2d Cir.2007) (quoting *Bell Atl. Corp.,* 127 S.Ct. at 1974).

"'[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations,'" and will not defeat the motion. *Gavish v. Revlon, Inc.,* No. 00 Civ. 7291(SHS), 2004 WL 2210269, at *10, 2004 U.S. Dist. LEXIS 19771, at *10 (S.D.N.Y. Sept. 30, 2004) (quoting *Citibank, N.A. v. Itochu Int'l, Inc.,* No. 01 Civ. 6007(GBD), 2003 WL 1797847, at *1, 2003 U.S. Dist LEXIS 5519, at *2 (S.D.N.Y. Apr. 4, 2003)).

## B. *The Merits*

### 1. *Copyright Infringement*

It is undisputed as a factual matter that Paramount copied the Silver Slugger, as an actual Silver Slugger appears in the Film. Paramount argues, however, that the use of the pinball machine was so trivial that the copying is not actionable.

#### a. *Applicable Legal Standards*

 A copyright holder enjoys the right to reproduce and display publicly a copyrighted work. 17 U.S.C. § 106(1), (5). To prevail on a claim of copyright infringement, a plaintiff must prove that (1) unauthorized copying of the copyrighted work occurred, and (2) the infringing work is substantially similar. *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,* 338 F.3d 127, 131 (2d Cir. 2003). To prove substantial similarity, a plaintiff must show "'(i) that it was protected expression in the earlier work that was copied and (ii) that the amount that was copied is 'more than de minimis.'"" *Id.* (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137–38 (2d Cir.1998)); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (holding that copyright infringement plaintiff must show valid copyright and copying of original elements of work).

 To determine substantial similarity, a court must decide "whether the average lay observer would recognize the challenged material as having been copied from the copyrighted work." *Crane v. Poetic Prods.,* 549 F.Supp.2d 566, 569 (S.D.N.Y.2008) (quoting *Flaherty v. Filardi,* 388 F.Supp.2d 274, 286 (S.D.N.Y.2005)). When similar works resemble each other only in unprotected aspects—for example, when similarities inhere in ideas, which are by definition unprotected, or in expression that is not proprietary to plaintiff—the defendant prevails. *Bill Diodato Photography, LLC v. Kate Spade, LLC,* 388 F.Supp.2d 382, 390 (S.D.N.Y.2005) (citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[B][2] (2005)); *see also Tufenkian,* 338 F.3d at 131 ("[S]ubstantial similarity, we emphasize again, must be to that which is protected in the plaintiff's work.").

 In some instances, substantial similarity may be an issue even where, as here, copying as a factual matter is established. As the Second Circuit has explained, there is a difference between "factual copying and actionable copying":

> The former (probative similarity) requires only the fact that the infringing work copies something from the copyrighted work; the latter (substantial similarity) requires that the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred.

*Ringgold v. Black Entm't T.V. Inc.,* 126 F.3d 70, 75 (2d Cir.1997). In other words, even when it is undisputed that copying as a factual matter occurred, there still may be an issue as to whether the copying is actionable. *Id.*

■ The legal maxim *"de minimis non curat lex"*—"the law does not concern itself with trifles"—applies in the copyright context. *Id.* at 74. For example, if the copying is *de minimis* and so "trivial" as to fall below the quantitative threshold of substantial similarity, the copying is not actionable. *Id.* 74–75; *see also Davis v. Gap, Inc.*, 246 F.3d 152, 172 (2d Cir.2001) (where unauthorized copying is trivial, "the law will not impose legal consequences"); *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir.1998) ("To establish that the infringement of a copyright is *de minimis*, and therefore not actionable, the alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying.'") (quoting *Ringgold*). To determine whether the quantitative threshold of substantial similarity is met in cases involving visual works, courts consider the extent to which the copyrighted work is copied in the allegedly infringing work. The observability of the copyrighted work is critical, and courts will consider the length of time the copyrighted work is observable as well as factors such as focus, lighting, camera angles, and prominence. *Sandoval*, 147 F.3d at 217; *Ringgold*, 126 F.3d at 75.

In *Sandoval*, the Second Circuit affirmed the district court's determination that the use of the plaintiff's copyrighted photographs in the motion picture "Seven" was *de minimis* and therefore not actionable. The photographs appeared in the film for a total of only 35.6 seconds. They were primarily in the background and were never in focus, and they were often obstructed from view. *See Sandoval*, 147 F.3d at 218 ("[The] photographs as used in the movie are not displayed with sufficient detail for the average lay observer to identify even the subject matter of the photo-graphs, much less the style used in creating them.").

Courts in this district have dismissed copyright infringement claims on Rule 12(b)(6) motions where no substantial similarity was found. *See Bell v. Blaze Magazine*, No. 99 Civ. 12342(RCC), 2001 WL 262718, at *3, 2001 U.S. Dist. LEXIS 2783, at *9 (S.D.N.Y. Mar. 16, 2001) (dismissing plaintiff's claim where no reasonable jury could find substantial similarity or that similarity pertains only to unprotected aspects of work); *Boyle v. Stephens, Inc.*, No. 97 Civ. 1351(SAS), 1998 WL 80175, at *4, 1998 U.S. Dist. LEXIS 1968, at *12 (S.D.N.Y. Feb. 25, 1998) (same).

#### b. *Application*

■ Based on the facts alleged in the complaint, and on a viewing of the Film, I conclude that there is no plausible claim of copyright infringement here. Although Gottlieb has sufficiently pled unauthorized copying of its Designs, the use of the Silver Slugger was *de minimis* as a matter of law. Hence, no reasonable juror could find substantial similarity in the legal sense, and thus the copying is not actionable.

The scene in question lasts only three-and-a-half minutes, and the Silver Slugger appears in the scene sporadically, for no more than a few seconds at a time. More importantly, the pinball machine is always in the background; it is never seen in the foreground. It never appears by itself or in a close-up. It is never mentioned and plays no role in the plot. It is almost always partially obscured (by Gibson and pieces of furniture), and is fully visible for only a few seconds during the entire scene. The Designs (on the backglass and play-field of the pinball machine) are never fully visible and are either out of focus or obscured. Indeed, an average observer would not recognize the Designs as any-

thing other than generic designs in a pinball machine.

Gottlieb cites to *Ringgold* in support of its claim, but the facts of that case are inapposite. *Ringgold* involved the unauthorized use of a copyrighted poster in an episode of a HBO television series. The poster was shown, in whole or in part, nine times during a five-minute scene at the end of the episode. The poster (or a portion thereof) was seen for 1.86 to 4.16 seconds at a time, for a total of 26.75 seconds. In some instances, the poster appeared at the center of the screen. 126 F.3d at 72–73. As the Second Circuit held, the poster was "plainly observable." *Id.* at 76.

More importantly, there was a qualitative connection between the poster and the show. The poster included a painting depicting a Sunday School picnic held by the Freedom Baptist Church in Atlanta, Georgia, in 1909, and was intended to convey "aspects of the African–American experience in the early 1900s." *Id.* at 72. The show was "ROC," a television "sitcom" series about a middle-class African–American family living in Baltimore, and the scene in question was of a gathering in a church hall with a minister. *Id.* at 72–73. The Second Circuit noted that HBO's production staff "evidently thought that the poster was well suited as a set decoration for the African–American church scene of a ROC episode." *Id.* at 77. The Second Circuit concluded:

> From the standpoint of a quantitative assessment of the segments, the principal four-to-five second segment in which almost all of the poster is clearly visible, albeit in less than perfect focus, reenforced by the briefer segments in which smaller portions are visible, all totaling 26 to 27 seconds, are not *de minimis* copying.
>
> ... The painting component of the poster is recognizable as a painting, and with sufficient observable detail for the "average lay observer" ... to discern African–Americans in Ringold's colorful, virtually two-dimensional style. The *de minimis* threshold of actionable copying of protected expression has been crossed.

*Id.* at 77 (citation omitted).

In the present case, the "average lay observer" would not be able to discern any distinctive elements of Gottlieb's Designs—the baseball players clad in stylized, futuristic gear. The best that the average lay observer could make out in the background is a typical home-plate layout with baseball players arrayed around it. The unique expressive element of the Designs is not discernable in those brief moments when the backglass is visible. The only other protected element of the backglass is the "Silver Slugger" logo in the upper left hand corner, which is glimpsed fleetingly, and in poor focus, during the scene. The camera sweeps past the logo without dwelling or focusing on it. The average lay observer would not discern the stylized aspects of the logo attributable to Gottlieb based on the way the logo appears in the background of the scene.

Gottlieb also asserts that the "Silver Slugger" logo emblazoned on the right side of the pinball machine, which is visible near the center of the frame during the final seconds of the scene, should rise to the level of actionable copyright infringement. (Pl. Mem. 8). But Gottlieb has only claimed copyrights in the Designs on the backglass and the playing field, and not for the "Silver Slugger" logo on the side of the pinball machine. (Compl. 2). Moreover, the "Silver Slugger" logo occupies less than five percent of the frame area, is partially obscured by scenery in the foreground (including Gibson's head), and is not elevated into any prominence by the camera. Even if Gottlieb were to as-

sert a proprietary claim over this logo, the circumstances here would compel the conclusion that the copying was de minimis as well.

Moreover, while use of a copyrighted work in the background may still be a basis for an infringement claim, see Ringgold, 126 F.3d at 77, where the use is de minimis, the copying will not be actionable, even where the work was chosen to be in the background for some thematic relevance. As the Second Circuit explained in Ringgold, "in some circumstances, a visual work, though selected by production staff for thematic relevance, or at least for its decorative value, might ultimately be filmed at such distance and so out of focus that a typical program viewer would not discern any decorative effect that the work of art contributes to the set." 126 F.3d at 77. Here, undoubtedly the Silver Slugger was chosen by the production staff because it fit in with the "sporty" theme of the background in the scene; but the Silver Slugger was one of numerous background items, and it was filmed in such a manner and appears so fleetingly that I conclude there is no plausible claim for copyright infringement here. Accordingly, Gottlieb's copyright infringement claim is dismissed.

## 2. The Trademark Claim

I also conclude that Gottlieb has not pled a plausible trademark infringement claim. Gottlieb alleges that Paramount's unauthorized use of its trademark in the Film is likely to cause confusion as to the source and sponsorship of Gottlieb's products. But there is no plausible claim of a likelihood of confusion here, for the reasons that follow.

### a. Applicable Legal Standards

Section 43(a)(1)(A) of the Lanham Act provides a cause of action for a trademark holder against any person who misuses its trademark in a way that is "likely to cause confusion" to the buying public as to the origin, affiliation or sponsorship of the trademark holder's product or service. 15 U.S.C. § 1125(a)(1)(A).

To bring a successful claim under section 43(a)(1)(A), a plaintiff must show that (i) it has a distinctive mark, i.e. that it has a mark or trade dress distinctive to the source of the good or service at issue, and (ii) there exists a likelihood of confusion between the plaintiff's good or service and that of the defendant by the buying public. See Wal–Mart Stores v. Samara Bros., 529 U.S. 205, 210, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000); ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 154 (2d Cir. 2007); Twentieth Century Fox Film Corp. v. Marvel Enters., 155 F.Supp.2d 1, 20 (S.D.N.Y.2001).

The hallmark of infringement is the likelihood of confusion by the buying public between the plaintiff's goods or services and that of the defendant. See Fed. Express Corp. v. Fed. Espresso, Inc., 201 F.3d 168, 174 (2d Cir.2000); Estee Lauder Inc. v. The Gap, Inc., 108 F.3d 1503, 1508–09 (2d Cir.1997). Therefore, for a cognizable claim in trademark cases, the plaintiff must raise "a serious question" as to the likelihood of confusion. Am. Cyanamid v. Campagna per le Farmacie in Italia, S.P.A., 847 F.2d 53, 55 (2d Cir.1988) (internal citations and quotations omitted).

### b. Application

I assume that Gottlieb is the owner of the GOTTLIEB mark and that the mark is distinctive. The key issue is the likelihood of confusion.

Gottlieb does not allege any facts to support the conclusion that consumer confusion will likely result from Paramount's use of its mark. On a viewing of the Film, it would be difficult for even a keen observer to pick out Gottlieb's trade-

mark, as it appears in the background of the scene. The trademark is visible at various places on the pinball machine, but it occupies only a minute fraction the frame for three segments lasting approximately three seconds each. Moreover, as discussed above, the pinball machine is merely part of the background, together with another pinball machine, a foosball table, and other furniture and furnishings.

■ In these circumstances, Gottlieb's assertion that the appearance of its trademark in the Film would confuse ordinarily prudent consumers as to the sponsorship or affiliation of its pinball machines is simply not plausible. *See Sherwood 48 Assocs. v. Sony Corp. of Am.*, 213 F.Supp.2d 376, 377 (S.D.N.Y.2002) (dismissing plaintiff's Lanham Act claims because the lone fact that defendant digitally inserted images of plaintiff's Time Square buildings into a scene of the film "Spider–Man" did not indicate consumer confusion), *aff'd in part, vacated in part on other grounds*, 76 Fed.Appx. 389 (2d Cir.2003). Courts are not concerned with "mere theoretical possibilities of confusion" or "de minimis situations" in trademark cases. *See Elec. Design & Sales, Inc. v. Elec. Data Sys. Corp.*, 954 F.2d 713, 717 (Fed.Cir.1992). Other courts that have considered the appearance of consumer products in motion pictures routinely fail to find any likelihood of confusion. *See, e.g., Wham–O Inc. v. Paramount Pictures Corp.*, 286 F.Supp.2d 1254, 1262 (N.D.Cal.2003) (appearance of plaintiff's water slide toy in defendant's motion picture will not lead "[c]onsumers and viewers [to] mistake plaintiff for a movie production house, and consumers and viewers will not mistake defendants for a purveyor of toys."). Here, no viewer of the Film would consider whether Paramount sponsored the pinball machine or Gottlieb sponsored the Film.

Nor does Gottlieb allege any fact tending to show willful infringement or bad faith on the part of Paramount in its use of the Gottlieb mark. In *Caterpillar Inc. v. Walt Disney Co.*, the court expressed discomfort with the plaintiff's Lanham Act claim because there was no indication of the defendant's intent to "poach or free-ride" on the fame or good will of the plaintiff's trademarks. 287 F.Supp.2d 913, 919 (C.D.Ill.2003). As the court in *Caterpillar* pointed out, the "mere appearance" of a Ford Taurus in a generic film scene involving a car chase would not, by itself, support a trademark infringement claim. *Id.* at 920. The court concluded that no consumer decision would likely be affected as a result of "any mistaken belief that Caterpillar sponsored [defendant's] movie." *Id.* There is no indication that Paramount deliberately placed the Silver Slugger into the scene to capitalize on the good will associated with Gottlieb's mark. Paramount could just as well have substituted any other pinball machines to meet its purpose, and, in fact, there was a second, apparently unrelated pinball machine in the scene as well.

■ It should be noted that Gottlieb does allege a theory of harm in its opposition brief—namely, that its business reputation will be injured by any association of its products with the actor Mel Gibson and his purported anti-Semitic beliefs. (Pl. Mem. 17–18). The notion that any viewer of the Film would think less of Gottlieb because its pinball machine appears briefly in the background in a romantic comedy featuring Mel Gibson is absurd. Moreover, Gottlieb "may not rely on the purely dignitary, non-commercial harm that might arise from being associated with defendants or defendants' products" when asserting a Lanham Act claim. *Cecere v. R.J. Reynolds Tobacco Co.*, No. 98 Civ. 2011(RPP), 1998 WL 665334, at *2, 1998 U.S. Dist. LEXIS 15100, at *6 (S.D.N.Y. Sept. 27, 1998) (dismissing Lanham Act

claim because plaintiff failed to allege specific economic losses that would result from defendant's use of a photograph of plaintiff's building to advertise Camel Cigarettes).

Gottlieb alleges no facts to suggest that Paramount's use of its trademark will likely cause consumer confusion, or that Paramount was motivated by ill-intent to free-ride on the goodwill associated with Gottlieb's mark. Because Gottlieb does not amplify its trademark claim with factual allegations to rise "above the speculative level," *Twombly*, 127 S.Ct. at 1965, its trademark infringement claim is hereby dismissed.

### 3. *The Deceptive Trade Practices Claim*

Gottlieb further alleges deceptive trade practices under New York General Business Law Section 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," and expressly provides a private right of action to "any person who has been injured by reason of any violation" of the statute. N.Y. Gen. Bus. Law § 349(a), (h) (McKinney 2008). This claim is dismissed as well.

#### a. *Applicable Legal Standards*

 To bring a claim under section 349, a plaintiff must show that: (1) the defendant's conduct was misleading in a material respect, and (2) the conduct was directed at the public at large, injuring the plaintiff thereby. *See Twentieth Century Fox Film Corp. v. Marvel Enters.*, 155 F.Supp.2d 1, 25 (S.D.N.Y.2001). Private transactions not of a recurring nature or without ramifications for the general public do not fall within the purview of section 349. *Netzer v. Continuity Graphic Assocs.*, 963 F.Supp. 1308, 1323 (S.D.N.Y. 1997) (focus of section 349 is on consumer protection, and "generally prohibits only those deceptive practices affecting the public at large").

 " 'The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising.' " *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, No. 04 Civ. 6189(JFK), 2008 WL 3906889, at *18, 2008 U.S. Dist. LEXIS 64297, at *56 (S.D.N.Y. Aug. 21, 2008) (quoting *Genesco Entm't v. Koch*, 593 F.Supp. 743, 751–52 (S.D.N.Y. 1984)). Whether a plaintiff can bring a section 349 claim will depend on "whether the matter affects the public interest in New York." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995).

 The pleading standards under the Lanham Act and section 349 of the New York General Business Law are "substantially the same." *Avon Prods. v. S.C. Johnson & Son, Inc.*, 984 F.Supp. 768, 800 (S.D.N.Y.1997). Courts thus adopt essentially the same analysis for both section 349 and Lanham Act claims. *See 24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 447 F.Supp.2d 266, 288 (S.D.N.Y. 2006) ("These claims depend on the same analysis . . . ."); *accord Twentieth Century Fox*, 155 F.Supp.2d at 26.

#### b. *Application*

Gottlieb fails to allege any facts that tend to show either material deception on the part of Paramount or harm to the public interest.

 Gottlieb has not alleged any facts to show that Paramount's conduct could materially mislead the public. For the reasons that Gottlieb fails to plead a set of facts that would demonstrate a likelihood of confusion to sustain a Lanham Act claim, it likewise cannot show any materially misleading conduct by Paramount. The assertion that Paramount misled the

public by using the Silver Slugger in the background in one scene in the Film is not plausible.

 Likewise, Gottlieb fails to allege a plausible claim that Paramount's conduct injured the public interest. Gottlieb has not alleged any facts that support the claim that it has been harmed by Paramount's conduct, much less to support the proposition that the public at large has been misled. Although Gottlieb insists that Paramount's conduct has ramifications for consumers at large, it has not furnished anything more than conclusory and speculative allegations about how the public will be deceived as to the affiliation or endorsement of its products. (Pl. Mem. 22). *See Vitolo v. Mentor H/S, Inc.*, 426 F.Supp.2d 28, 34 (E.D.N.Y.2006), *aff'd*, 213 Fed.Appx. 16 (2d Cir.2007) (no cognizable claim under section 349 where plaintiff's complaint focused on losses suffered by plaintiff's business rather than by plaintiff's patients or public at large).

Accordingly, Gottlieb's claim under section 349 of the New York General Business Law is dismissed.

#### 4. *Remaining State Law Claims*

 Gottlieb also brings claims of unfair competition and unjust enrichment under New York common law, asserting that such claims arise from Paramount's unauthorized use of both its copyrights and its trademark. (Compl. ¶¶ 21, 24). To the extent that these state law claims of unfair competition or unjust enrichment sound in misappropriation of copyright, they are preempted by the Copyright Act. 17 U.S.C. § 301(a); *see also Twentieth Century Fox*, 155 F.Supp.2d at 24–25 (dismissing plaintiff's claim of unfair competition under New York law as preempted by Copyright Act) (citing *Arden v. Columbia Pictures Indus., Inc.*, 908 F.Supp. 1248, 1263 (S.D.N.Y.1995)); *Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F.Supp. 926,

933–34 (S.D.N.Y.1996) (stating that claims of unfair competition and unjust enrichment under state law deriving from unauthorized use of material are preempted by copyright law). To the extent Gottlieb's state common law claims are based on its trademark infringement claim, they are dismissed for the reasons that its trademark claim is dismissed, as discussed above. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 119 (2d Cir.2006) (unfair competition claim under New York Law is analyzed in the same manner as a Lanham Act trademark infringement claim); *Info. Superhighway, Inc. v. Talk Am., Inc.*, 395 F.Supp.2d 44, 56 (S.D.N.Y.2005) (stating that elements of unfair competition under New York law "mirror Lanham Act claims").

### CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted in its entirety, with prejudice and with costs (but without attorneys' fees). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.